**William KUNTZ, III, Appellant,**

v.

**Joseph A. PARDO, as Trustee of the Estate of W.T. Grant Company, Bankrupt, Appellee.**

**In re W.T. GRANT COMPANY, Bankrupt.**

**No. 93 Civ. 2390 (SS).**
**Bankruptcy No. 75 B 1735(CB).**

United States District Court,
S.D. New York.

Oct. 14, 1993.

William Kuntz, III, New York City, pro se.

Richard Krasnow, Weil Gotshal & Manges, New York City, for trustee.

Joseph A. Pardo, trustee.

## *ORDER*

SOTOMAYOR, District Judge.

*Pro se* appellant William Kuntz, III ("Kuntz"), seeks reinstatement of his appeal (the "Appeal") from an order of the Bankruptcy Court dated March 12, 1993. For the reasons stated below, the request, which I treat as a motion pursuant to Fed.R.Civ.P. 60(b), is **DENIED.** The Trustee's motion for sanctions is also **DENIED.**

### I. *Background*

By Order dated March 12, 1993, the Bankruptcy Court (a) approved the Trustee's Final Report and Account dated February 24, 1993, in the bankruptcy proceedings of the W.T. Grant Company; (b) granted final allowances of commissions to the Trustee, compensation to the Trustee's attorneys and accountants, and reimbursement of disbursements; (c) authorized final distributions to creditors; and (d) closed the bankrupt estate (the "Bankruptcy Court Order"). On March 19, 1993, Kuntz filed with this Court a notice of appeal from the Bankruptcy Court Order (the "Appeal"). By order dated April 14, 1993, and entered on April 16, 1993 (the "Order"), this Court dismissed the Appeal on the grounds that Kuntz had failed to prosecute it in a timely fashion. The corresponding judgment, dated April 19, 1993 (the "Judgment"), was entered on April 20, 1993.

The Appeal was dismissed because Kuntz failed to comply with Fed.R.Bankr.P. 8006, which requires, *inter alia,* that an appellant file with the Clerk of the Bankruptcy Court, within 10 days of the filing of a notice of appeal, a designation of the items to be included in the record on appeal and a statement of issues to be presented. The re-

quired designation was thus to be filed by March 29, 1993. Kuntz did file a designation, but not until April 20, 1993, three weeks late and after the judgment dismissing the Appeal had already been entered.

Kuntz subsequently filed papers dated May 27, 1993, requesting that his appeal be reinstated. I held a pre-motion conference on the request on June 24, 1993, and Kuntz filed formal motion papers in July. The Trustee opposes Kuntz's motion on the grounds that Kuntz has not established that his procedural failure was the result of excusable neglect, and because under Fed. R.Bankr.P. 8001, dismissal of an appeal is an appropriate remedy for non-compliance with Rule 8006. Fed.R.Bankr.P. 8001(a) provides, in pertinent part:

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal.

## II. *Discussion*

At the outset, I note that Kuntz does not specify the rule under which he brings his motion. At oral argument, he explained that he perceived the motion to re-instate his appeal as one governed by Fed.R.Civ.P. 60, to correct "a clerical error by the clerk." Transcript of Oral Argument at 18 (June 24, 1993) (hereinafter "T. at ___"). Rule 60(a) permits the court to correct "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission." The Order and Judgment dismissing Kuntz's appeal, however, most assuredly did not involve a clerical error; the Order was properly executed, based on a reasoned determination that Kuntz had failed to prosecute his appeal, and the Judgment correctly reflected and executed that Order.

Kuntz appears to suggest that his failure to comply with bankruptcy procedures was a result of the clerical error of the bankruptcy clerk, who allegedly mailed Kuntz an empty envelope after Kuntz filed his notice of appeal. Kuntz argues that in mailing him an empty envelope, the clerk failed to carry out his or her duty to inform Kuntz of the steps required to prosecute his appeal and that he is therefore entitled to relief under Rule 60(a). The bankruptcy clerk, however, has no such obligation. Moreover, an erroneous mailing by the clerk is not the type of "mistake" that warrants relief under Rule 60(a).

Another possibility is that Kuntz intended to have brought a motion pursuant to Fed. R.Civ.P. 59(e) for reconsideration of the dismissal order. Under Rule 59(e), however, a "motion to alter or amend the judgment" must be served "not later than 10 days after entry of the judgment." Since Kuntz's motion was brought no less than five weeks after the entry of judgment dismissing the appeal, it is untimely pursuant to Rule 59(e). Consequently, I cannot treat his motion as one for reconsideration, and therefore do not address the correctness of the original order to dismiss.

The Trustee was also puzzled by the unspecified procedural parentage of this motion, and suggested that the motion might be one pursuant to Fed.R.App.P. 4(a)(5), which provides:

> The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration [of the 30 day period for appeal].

Since the Dismissal Judgment was entered on April 20, 1993, however, Kuntz was required to file his notice of appeal therefrom by no later than May 20, 1993. *See* Fed. R.App.P. 4(a)(1) (notice of appeal must be filed within 30 days after date of entry of judgment or order appealed from). This he failed to do. He could have brought a Rule 4(a)(5) motion between May 21 and June 20, when he wrote to the Court asking for a conference to re-instate his appeal. Yet, he did not. Instead, Kuntz's letter to the Court and his subsequently filed papers denominated his request as a "Motion to Re-instate the Appeal," with no reference whatsoever to the Court of Appeals, and no indication that he wished to, or intended to, file an appeal to

the Second Circuit. Even if this were a Rule 4(a)(5) motion, however, it would be denied because, as explained below, Kuntz has not shown that his failure to act in a timely manner was the result of excusable neglect. Nor was there good cause; indeed, the procedural history of this entire bankruptcy demonstrates Kuntz's complete disregard for the rules of court.

Kuntz could have moved pursuant to Fed. R.Bankr.P. 9006(b) for an enlargement of the Rule 8006 filing time. Rule 9006(b)(1)(1) permits a court to enlarge the filing period "if the request therefor [was] made before the expiration of the period originally prescribed." Moreover, "on motion made after the expiration of the specified period [the court may] permit the act to be done where the failure to act was the result of excusable neglect." Fed.R.Bankr.P. 9006(b)(1)(2). Since the time limit for filing the designation had passed when Kuntz made his motion, only Rule 9006(b)(1)(2) could apply. I decline to treat Kuntz's motion as one brought pursuant to this rule, however, because his motion was made after a judgment had been entered dismissing the appeal. Since, as explained below, I find that his failure to act in a timely manner was not the result of "excusable neglect," Kuntz would not prevail on his request even if I did treat it as a Rule 9006(b)(1)(2) motion. *See Sierra Switchboard Co. v. Westinghouse Electric Corp.,* 789 F.2d 705, 709 (9th Cir.1986) (Skopil, C.J., concurring) (district court "should have dismissed appeal for failure to timely designate record and issues on appeal," especially where appellant did not move for enlargement of time or show excusable neglect).

■ Having considered and rejected four possible procedural postures for the request at bar, I now turn to the rule that I believe most properly governs this motion. Fed. R.Civ.P. 60(b) permits the court to "relieve a party or a party's legal representative from a final judgment [or] order for ... (1) ... excusable neglect." Kuntz's request is timely as a Rule 60(b)(1) motion since it was brought within one year of the judgment. Fed.R.Civ.P. 60(b). Moreover, the absence of the specific rule number in Kuntz's papers does not bar my treating his request in this manner since substance, rather than form, governs the consideration of a request as a motion pursuant to Rule 60(b). *See, e.g., Butler v. Pearson,* 636 F.2d 526 (D.C.Cir. 1980).

Kuntz appears to contend that his failure to comply with Rule 8006 constitutes excusable neglect entitling him to relief from the Order of Dismissal. I address this argument with care, cognizant that Kuntz's failure to file a timely Rule 59 motion and his failure to file a timely Notice of Appeal from the Judgment practically eliminate other mechanisms for challenging the dismissal of his appeal. Even so, I disagree with Kuntz's contention.

■ The Supreme Court recently held that the determination of what constitutes "excusable neglect" within the meaning of Fed.R.Bankr.P. 9006(b)(1), which is patterned after Fed.R.Civ.P. 6(b), requires a court to undertake an equitable analysis of all the relevant circumstances. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (considering "excusable neglect" for failing to file a bankruptcy claim prior to the bar date). The Court also suggested that its analysis was applicable to the determination of "excusable neglect" under Rule 60(b) as well.[1] *Id.,* at ——, 113 S.Ct. at 1497.

---

1. My finding that there was no "excusable neglect" also follows from the Rule 60(b)(1) standards that developed prior to the Supreme Court's decision in *Pioneer.* The Second Circuit, observing that Rule 60(b) "strikes a balance between serving the ends of justice and preserving the finality of judgments," explained that the rule "allows extraordinary judicial relief [and so] is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986) (misreading the law and "not fully weigh[ing]"

the consequences of entering into a stipulation not excusable neglect). Those cases seem to focus on the existence of neglect, and an inquiry as to whether or not it was excusable. For example, in *Foley v. United States,* 645 F.2d 155 (2d Cir.1981), delays in complying with a scheduling order arose from the difficulties following plaintiff's death. By contrast, plaintiff here has simply made no showing that his failure to comply with the designation deadline was "excusable."

■ In *Pioneer*, the Supreme Court held that a court should equitably balance a number of factors in order to determine whether the failure to comply with a procedural deadline constituted excusable neglect. These factors include (i) the reason for the delay, including whether it was within the reasonable control of the movant; (ii) the potential prejudice to the debtor as a result of the delay; (iii) the length of delay and its potential impact on the case; and (iv) whether the movant acted in good faith. *Id.*, —— U.S. at ——, 113 S.Ct. at 1498.

■ Addressing each factor in turn, I consider first the reasons for Kuntz's delay in prosecuting his appeal. The steps that Kuntz was required to take were self-executing; the deadline for designating the record and the appellate issues depends on the date on which Kuntz filed the Notice of Appeal—an act fully within his control—and nothing more. In this regard, his purported receipt of an empty envelope from the Bankruptcy Court is of little significance since no actions by the Bankruptcy Court were required to trigger his obligation to file the Designation.

Moreover, Kuntz's status as a *pro se* litigant is of little import. During his fourteen-year participation in the underlying Grant bankruptcy proceedings, Kuntz has amassed litigation experience that would embarrass the majority of associates, and some partners, at large New York law firms. He has already filed no fewer than eight appeals, all unsuccessful, with six dismissed as either untimely or for failure to prosecute. I had to adjourn one conference in this action because Kuntz had an argument before the Second Circuit. Although I am unsure what significance to give to the ten years that Kuntz purportedly spent in law school, I find that his failure to comply with court rules, procedures, and deadlines is the result of conscious disregard, and not because of unfamiliarity with the courts. Throughout the proceedings, Kuntz has demonstrated a consistent pattern of vexatious litigation and little respect for the courts or other parties. The acts required of Kuntz were within his complete control and there was no acceptable reason for the delay.

As far as potential prejudice to the debtor, I observe that barring Kuntz's activities respecting this appeal, the Estate appears poised to make the final distribution and wind-up this long bankruptcy. Allowing Kuntz belatedly to prosecute yet another appeal will further delay the Trustee in closing the estate and it will prejudice certain bank creditors holding allowed claims against the Grant estate in the amount of $650 million who have yet to be paid their final distribution of approximately $1.2 million. Moreover, in addition to the delay in the distribution, allowing Kuntz to proceed with the appeal will further deplete estate assets which would otherwise be available for distribution to the bank creditors as a result of legal costs that the Trustee will be forced to incur. Although I recognize that legal costs will always result from allowing an appeal to proceed, the hemorrhaging of money is particularly disturbing given the long history of delay and cost Kuntz has occasioned in this proceeding.

■ This bankruptcy has dragged on for well over a decade. Apart from creating further delays and additional legal expenses, allowing yet another appeal would probably not alter the rights of the parties involved. It is unlikely that Kuntz has standing to appeal from the March 12 Order. The only persons with standing to appeal an order of the bankruptcy court are those who will suffer direct and adverse pecuniary affects by the order. *See, e.g., Kane v. Johns–Manville Corp.*, 843 F.2d 636, 641 (2d Cir.1988). Absent such limitation on appellate standing, "bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." 843 F.2d at 642. Since Kuntz is merely a shareholder of Grant, and as such would almost certainly not have standing to appeal the March 12 Order, allowing him to prosecute the appeal would not result in a more just allocation of the estate's limited resources.

Kuntz's dilatory conduct throughout his participation in the Grant case evinces bad faith. Apart from the lack of merit to his appeals, he has repeatedly failed to abide by the rules of the court and repeatedly fails to

**40**

prosecute the appeals that he has filed. By contrast to cases holding that a party should not be penalized without considering the relative culpability of the appellant and his or her attorney, *see, e.g., National Bank of Long Beach v. Donovan,* 871 F.2d 807 (9th Cir.1989); *Sierra Switchboard Co. v. Westinghouse Electric Corp.,* 789 F.2d 705 (9th Cir.1986); *Myers v. Shekter,* 775 F.2d 1385 (9th Cir.1985), Kuntz has elected to appear *pro se* and thus the culpability is all his. There is no injustice manifest in allowing Kuntz to bear the brunt of his own neglect.

I note as well that the failure to designate the record is not a minor error; "[t]he record, unlike a brief, may be indispensable to a decision on appeal." *Sierra Switchboard,* 789 F.2d at 710 (Skopil, C.J., concurring).

 Finally, the Trustee seeks sanctions pursuant to Fed.R.Civ.P. 11. "Rule 11 is targeted at situations where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Rodick v. City of Schenedectady,* 1 F.3d 1341, 1350 (2d Cir.1993) (citations omitted). In the motion at bar, Kuntz's contention that the Order dismissing the appeal—as opposed to the appeal itself—was erroneous is not frivolous. After all, Bankruptcy Rule 8001 does not compel the dismissal of an appeal. Kuntz has not prevailed, however, because he has not brought a Rule 59(e) motion for reconsideration of that Order, but rather what I have regarded, for lack of a more feasible alternative, as a Rule 60(b) motion alleging excusable neglect. Although I have not found excusable neglect, I cannot say that Kuntz had "absolutely no chance of success" on that theory, particularly when that rule requires a balancing of equities. Moreover, "[w]hile it is true that Rule 11 applies both to represented and *pro se* litigants, the court may consider the special circumstances of litigants who are untutored in the law." *Maduakolam v. Columbia University,* 866 F.2d 53, 56 (2d Cir.1989). In *Maduakolam,* the Second Circuit affirmed the trial court's denial of *pro se* plaintiff's Rule 60(b)(1) motion but reversed an award of sanctions. The court observed that there

was "nothing in the record to indicate that [plaintiff] knew or should have known that his 'motion to reopen case' was time-barred." *Id.*

This case is admittedly a close call, since I warned Kuntz that he risked sanctions in bringing his motion and he was fully apprised of the procedural difficulties with his case, T. at 15–17. I nonetheless find that his argument that there was excusable neglect is not so meritless as to warrant sanctions, and in any event there was nothing in the record to suggest that he should have thought otherwise.

### III. *Conclusions*

For the reasons set out above, plaintiff's motion "to re-instate appeal," is **DENIED**, and the Trustee's motion for sanctions is also **DENIED**.

**SO ORDERED.**