**Ronald RICCIO, Plaintiff,**

v.

**The State of NEW YORK, The County of Suffolk, and Jane Solton (Probation Officer), Defendants.**

**No. 08–CV–1588.**

United States District Court, E.D. New York.

May 10, 2012.

Joseph C. Stroble, Sayville, NY, for Plaintiff.

Richard T. Dunne, Susan A. Flynn, Suffolk County Attorney's Office, Hauppauge, NY, for Defendant.

*MEMORANDUM AND ORDER*

KUNTZ, District Judge.

Plaintiff Ronald Riccio ("Plaintiff") commenced this action against the State of New York, County of Suffolk, and "Jane" Solton[1] (probation officer employed by the County of Suffolk) (collectively, "Defendants") in connection with an incident where Plaintiff was arrested for aggravated harassment in the second degree in violation of N.Y. Penal Law § 240.30. Plaintiff seeks recovery under 42 U.S.C. § 1983 and analogous state laws for false arrest, false imprisonment, and malicious prosecution. Defendants move for summary judgment dismissing the complaint pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Defendants' motion is granted.

## I. Background

At approximately 9:02 a.m. on June 4, 2005, an individual named Renee Marks ("Ms. Marks" or the "Victim") called the Suffolk County 9–1–1 operator to report her ex-husband, Stephen Marks, was directing an individual to make threatening

---

1. The name of the probation officer as stated in her Affidavit, signed and dated February 2, 2012, is "Joann Soltan." Defs.' 56.1, Ex. G (Aff. of Joan Soltan, Feb. 2, 2012).

calls to her home phone number. Defs.' 56.1, Ex. A (Suffolk Cnty. Police Dep't Completed Call Report, June 8, 2006). At approximately 9:10 a.m., a Suffolk County police officer from the Seventh Precinct arrived at the residence of Ms. Marks and took an incident report. *Id.* Ms. Marks informed the police officer Plaintiff had made approximately twenty (20) threatening phone calls during the period from June 3, 2005 at 9:00 a.m. to June 4, 2005 at 9:02 a.m., and said "I'm going to burn your house down" and "You're gonna be sorry for what you did to your husband." Defs.' 56.1, Ex. B (Suffolk Cnty. Police Dep't Incident Report, June 4, 2005). Ms. Marks specifically identified Plaintiff by name—"Riccio, Ron"—in the incident report and told the police officer Plaintiff was a friend of her ex-husband. *Id.* Ms. Marks also stated Plaintiff called her "pretending to be a bank stating her house is in foreclosure." *Id.* She stated she "recognize[d] [Plaintiff's] voice and [was] annoyed and alarmed by [Plaintiff's] repeated calls. . . ." *Id.*

The Suffolk County Police Department made no immediate arrest and the case was transferred to the Seventh Precinct's Crime Control Unit for a follow-up investigation. Defs.' 56.1, Ex. C (Aff. of Vittoria McGuire, Feb. 8, 2012, at ¶¶ 3–4). Detective Vittoria McGuire was assigned to the aggravated harassment complaint made by Ms. Marks and reviewed the incident report. *Id.* at ¶¶ 4–5. On June 20, 2005, Ms. Marks came to the Seventh Precinct and gave a sworn statement detailing the threatening phone calls. *Id.* at ¶ 6. She stated she recognized the voice on the calls to be that of Plaintiff, who was an employee and friend of her ex-husband. *Id.* Ms. Marks stated she had known Plaintiff for at least ten (10) years. Defs.' 56.1, Ex. D (Statement of Renee Marks, June 20, 2005). She indicated she wished to press

charges against Plaintiff. *Id.;* Defs.' 56.1, Ex. C at ¶ 6.

On July 19, 2005, Detective McGuire filed a misdemeanor information charging Plaintiff with the offense of aggravated harassment in the second degree based on her investigation and the sworn statement given by Ms. Marks. Defs.' 56.1, Exs. C at ¶ 7, E (Misdemeanor Info., July 19, 2005). Although the Complaint alleges Plaintiff was falsely imprisoned and maliciously prosecuted on or about May 20, 2005, Compl. at ¶ 11, the misdemeanor information and transcript of record indicate the date of arrest/issue was July 19, 2005. Defs.' 56.1, Exs. E, F (Tr. of R. in *People v. Riccio,* 2005SU034469, Mar. 13, 2007). Furthermore, Ms. Marks made the initial complaint on June 4, 2005. Defs.' 56.1, Ex. A. On or about March 8, 2007, Plaintiff was granted an adjournment in contemplation of dismissal disposing of his charge. Defs.' 56.1, Ex. F.

On June 4, 2005, Plaintiff was on probation for an unrelated charge, and his probation officer was someone other than Defendant Soltan. Defs.' 56.1, Ex. G (Aff. of Joan Soltan, Feb. 2, 2012). Defendant Soltan became a probation officer in the Suffolk County Police Department of Probation on August 22, 2005. *Id.* at ¶ 1. She assumed probation responsibilities for Plaintiff on October 27, 2005—over four months after Ms. Marks made the 9–1–1 call. *Id.* at ¶¶ 3–4. Defendant Soltan did not have any contact with Plaintiff until November 2005, when his assigned monthly appointments began. *Id.* at ¶ 5. Furthermore, the arrest at issue "played no part whatsoever in [Defendant Soltan's] supervision of Mr. Riccio when he was assigned to [her] in October of 2005." *Id.* at ¶ 12. Defendant Soltan has never met or had any contact with Ms. Marks. *Id.* at ¶ 8. Defendant Soltan did not listen to any tape recordings of the alleged threatening

phone calls. *Id.* at ¶ 14. Additionally, Defendant Soltan has never had any contact with Detective McGuire. Defs.' 56.1, Ex. C at ¶ 9.

Plaintiff filed the Complaint on April 17, 2008, alleging on or about May 20, 2005, he was falsely arrested and maliciously prosecuted as a result of Defendant Soltan's negligence in making a false identification of his voice on a tape and encouraging Ms. Marks to file a false statement related to the prosecution of Plaintiff. Plaintiff alleges Defendant Soltan "continuously and negligently failed to take steps to remedy her tortious conduct, and otherwise, advise the prosecutors(s) at the Suffolk County District Attorneys' Office of her conduct." Compl. at ¶ 11. Plaintiff alleges the improper and tortious conduct that followed from the false identification resulted in the wrongful prosecution, false arrest, and false imprisonment of Plaintiff by Defendants the State of New York and the County of Suffolk. *Id.*

## II. Discussion

### A. Summary Judgment Standard

■ A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (internal citations and quotations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir.2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

■ If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case ... since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Chandok v. Klessig,* 632 F.3d 803, 812 (2d Cir.2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

### B. False Arrest

■ A § 1983 claim for false arrest sounding in the Fourth Amendment is "substantially the same" as a claim for false arrest under New York law. *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)). Under New York law, the torts of false arrest and false imprisonment are "synonymous." *Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir.1991). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement;

(3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Carson v. Lewis*, 35 F.Supp.2d 250, 257 (E.D.N.Y.1999) (Seybert, J.) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir.1995), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996)). The existence of probable cause is a complete defense to a § 1983 claim for false arrest. *Weyant*, 101 F.3d at 852; *Singer*, 63 F.3d at 118.

 A police officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. The validity of an arrest does not depend upon a finding that the arrested person is guilty. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Rather, a determination of the existence of probable cause "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Maryland v. Macon*, 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (internal citation omitted). The existence of probable cause may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers. *See, e.g., Singer*, 63 F.3d at 118–119 (affirming dismissal of claim on the ground that the facts as to the store owner's complaint of theft established probable cause). Here, the Court must determine whether a reasonable juror could believe officers lacked probable cause to arrest Plaintiff for aggravated harassment in the second degree pursuant to N.Y. Penal Law § 240.30.

Under New York law, "[a] person is guilty of harassment in the second degree when, with the intent to harass, annoy, threaten or alarm another person, he ... communicates with a person, anonymously or otherwise, by telephone ... in a manner likely to cause annoyance or alarm; or ... [m]akes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication...." N.Y. Pen. Law § 240.30. Based on the representations made by Ms. Marks, a reasonable jury could not find the officers lacked probable cause to arrest Plaintiff for aggravated harassment in the second degree. The information Ms. Marks provided in the 9–1–1 call, the ensuing police interview, the incident report, the follow-up meeting with Detective McGuire, and the sworn affidavit establish probable cause to arrest Plaintiff for aggravated harassment in the second degree. The officers were not required to explore and eliminate every possible claim of innocence before making the arrest. *Caldarola v. Calabrese*, 298 F.3d 156, 167–68 (2d Cir.2002).

 Furthermore, an arresting officer who has been advised of a crime by a person who claims to be the victim and who it seems reasonable to believe is telling the truth, has probable cause to arrest absent circumstances that raise doubts as to the victim's veracity. *Mistretta v. Prokesch*, 5 F.Supp.2d 128, 133 (E.D.N.Y.1998) (Gleeson, J.) (citing *Singer*, 63 F.3d at 119). "Indeed, as sources of information go, crime victims are among the most reliable; they usually can provide a first-hand, nonhearsay account of the criminal activity." *Id.; Miloslavsky v. AES Eng'g Soc'y*, 808 F.Supp. 351, 355 (S.D.N.Y.1992) (Sweet, J.) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed."), *aff'd*, 993 F.2d 1534 (2d Cir. 1993), *cert. denied*, 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993). Here, Plaintiff had a relationship with the Victim's ex-husband, the Victim had known Plaintiff

for at least ten (10) years, and the Victim recognized Plaintiff's voice on the threatening telephone calls. After the Victim made the initial complaint and provided an incident report to a Suffolk County police officer, Detective McGuire investigated the complaint. She conducted a meeting with the Victim and took a sworn statement in which the Victim stated Plaintiff had made numerous threatening phone calls to her. Accordingly, this Court finds the arresting police officers had the requisite probable cause to arrest Plaintiff for the single count of aggravated harassment in the second degree.

With respect to Defendant Soltan, Plaintiff offers no evidence to suggest Defendant Soltan was involved in the investigation or arrest for the offense at issue. Defendant Soltan provided a sworn affidavit stating she was not assigned to Plaintiff's case until October 25, 2005, and had no contact with Plaintiff prior to November 2005. Defs.'s 56.1, Ex. G, at ¶¶ 4–5. Defendant Soltan has never had any contact with Ms. Marks. *Id.* at ¶ 8. She has never listened to any tape recording of the threatening calls which are the subject of the complaint made by Ms. Marks. *Id.* at ¶ 14. The Court finds no evidence of Defendant Soltan's involvement in the Plaintiff's July 2005 arrest for aggravated harassment in the second degree.

### C. Malicious Prosecution

 A malicious prosecution action implicates the constitutional right "to be free of unreasonable seizure of the person." *Singer,* 63 F.3d at 116. To succeed on a § 1983 claim of malicious prosecution, the plaintiff "must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Id.* at 117. The elements of a malicious prosecution claim brought under § 1983 are substantially the same as in malicious prosecution claims brought under New York law. *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984). Under New York law, "[t]o prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiffs favor." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997). Defendants contend Plaintiff cannot establish the second required element as there was probable cause to charge Plaintiff. Defendants also argue Plaintiff fails to satisfy the fourth element of favorable termination.

 The second element of a malicious prosecution claim is whether the defendants had probable cause to prosecute the plaintiff. "[T]he existence of probable cause to prosecute entitles the defendant to summary judgment in his favor." *Genia v. N.Y. State Troopers,* No. 03–CV–0870, 2007 WL 869594, at *12 (E.D.N.Y. Mar. 20, 2007) (Bianco, J.) (internal citation omitted). In the context of malicious prosecution, "probable cause is the 'knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.' " *Genia,* 2007 WL 869594, at *12 (quoting *Rounseville v. Zahl,* 13 F.3d 625, 629–30 (2d Cir.1994)). Here, the question is whether Defendants had probable cause to charge Plaintiff with aggravated harassment in the second degree. As discussed *supra,* the representations made by Ms. Marks and the follow-up investigation conducted by Detective McGuire would lead a reasonable juror to find Defendants had probable cause to prosecute Plaintiff for aggravated harassment in the second degree. Plaintiff points to no intervening facts that vitiate the probable

cause that existed at the time of his prosecution.

The fourth element of a malicious prosecution claim requires a termination of criminal charges in the plaintiff's favor. This element "is designed principally to ensure against inconsistent judgments and to avoid parallel litigation as to questions of probable cause." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir.1997) (internal citations omitted). Where the criminal proceedings do not end in an acquittal, the element of favorable termination is satisfied "only when [the] final disposition is such as to indicate the innocence of the accused." *Id.* An adjournment in contemplation of dismissal ("ACD") does not qualify as a favorable termination. *Id.* at 949; *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir.1980) (holding that an "adjournment in contemplation of dismissal, like a consent decree, involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt"); *Daniel v. Safir*, 175 F.Supp.2d 474, 480–81 (E.D.N.Y.2001) (Gershon, J.) *aff'd*, 42 Fed.Appx. 528 (2d Cir.2002) (adjournment in contemplation of dismissal of charge of criminal harassment against arrestee was not favorable termination of case under New York and federal law, and thus arrestee's claim of malicious prosecution was precluded).

## III. Conclusion

This Court finds Defendants had probable cause to arrest and charge Plaintiff for the crime of aggravated harassment in the second degree under New York law. There is no evidence Defendant Soltan was involved in the investigation, arrest, or prosecution of Plaintiff for the offense at issue. Plaintiff's § 1983 claims and state law claims of false arrest, false imprisonment, malicious prosecution are dismissed on the merits. Based on the foregoing, Defendants' motion for summary judgment is GRANTED in its entirety.

*SO ORDERED.*